## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SUMATEE RAMROOP, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| TAKATA CORPORATION;<br>TK HOLDINGS, INC.;<br>HONDA MOTOR CO., LTD.;<br>AMERICAN HONDA MOTOR CO. INC., | JURY TRIAL DEMANDED |
| Defendants. | |

### COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, based on personal knowledge as to herself and her own acts, and upon information and belief as to all other matters, alleges as follows:

### NATURE OF CLAIMS

1.     This action concerns defective airbags manufactured by Defendant Takata Corporation and its related entities ("Takata"), and equipped in a vehicle manufactured by Defendant Honda Motor Company and its related entities ("Honda").

2.     The Takata airbag at issue in this case and the Takata airbags at issue in the MDL share a common, uniform defect:  the use of ammonium nitrate, a

1

notoriously volatile and unstable compound, as the propellant in their defectively designed inflators (the "Inflator Defect").  The inflator, as its name suggests, is supposed to inflate the airbag upon vehicle impact.  In the milliseconds following a crash, the inflator ignites a propellant to produce a gas that is released into the airbag cushion, causing the airbag cushion to expand and deploy.

3.     In the late 1990s, Takata shelved a safer chemical propellant in favor of ammonium nitrate, a far cheaper and more unstable compound that is much better suited for large demolitions in mining and construction than it is for a vehicle safety component.

4.     Under ordinary conditions, including daily temperature swings and contact with moisture in air, Takata's ammonium nitrate propellant transforms and destabilizes, causing irregular and dangerous behavior ranging from inertness to violent combustion.  Although aware of the risks, Takata decided to abandon a safer propellant in favor of the more dangerous, but significantly cheaper, ammonium nitrate.  Takata did so over the express objections and concerns of its engineers in Michigan.  Tellingly, Takata appears to be the only major airbag manufacturer that uses ammonium nitrate as the primary propellant in its airbag inflators.

5.     As a result of the Inflator Defect, instead of protecting vehicle occupants from bodily injury during accidents, the defective Takata airbags too

often either fail to deploy, overly aggressively deploy or violently explode, sometimes expelling metal debris and shrapnel at vehicle occupants. As of January 2015, complaints to regulators blame Takata airbags for at least 7 deaths and 139 injuries, including at least 37 reports of airbags that ruptured or spewed metal or chemicals.

6.     When Honda purchased Takata's airbags for its vehicles, it was aware that the airbags used the volatile and unstable ammonium nitrate as the primary propellant in the inflators.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over Plaintiff Sumatee Ramroop's claims based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), because the state of citizenship of the Plaintiff is different from the state of citizenship of each of the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is appropriate in this Court pursuant to LR 3.1, N.D. Ga, and 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants caused harm to the plaintiff who resides in this District, and the Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this District.

9.     This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, some of the actions giving rise to the complaint took place in this District, and some of Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to property in this state arising out of the Defendants' acts and omissions outside this state.

### THE PARTIES

#### A.     PLAINTIFF

10.    Plaintiff Sumatee Ramroop is a citizen of the State of Georgia, who at all times relevant hereto has resided and does reside at Stone Mountain, DeKalb County, Georgia.

#### B.     TAKATA DEFENDANTS

11.    Defendant **Takata Corporation** ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes and sells airbags. Takata is a vertically-integrated company and manufactures component parts in its own facilities.  Takata, either directly or through its wholly-owned subsidiaries, manufactures airbags for distribution in the United States and Georgia, including the airbags at issue in this litigation.  Takata

delivers its products, including the airbags at issue in this litigation, into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Georgia.

12.    Defendant **TK Holdings Inc.** ("TK Holdings") is a subsidiary of Takata Corporation and is headquartered in Auburn Hills, Michigan. TK Holdings sells, designs, manufactures, tests, markets, and distributes airbags in the United States.   TK Holdings both directly and through subsidiaries, owns 56 manufacturing plants in twenty countries.   TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation.   TK Holdings delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Georgia.

13.    Defendants Takata and TK Holdings are collectively referred to as "Takata" or "the Takata Defendants."   The Takata Defendants designed, manufactured, tested, marketed, distributed and sold the airbag system in the Plaintiff's vehicle involved in the underlying incident described below.

### C.    VEHICLE MANUFACTURER DEFENDANTS

14.    Defendant **Honda Motor Co., Ltd.** ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.   Honda Motor manufactures and sells motorcycles, automobiles, and power products

through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

15.    Defendant **American Honda Motor Co., Inc.** ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California.  American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, sport utility vehicles, and automobile parts in the United States.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana; East Liberty, Ohio; Lincoln, Alabama; and Marysville, Ohio.

16.    Defendants Honda Motor and American Honda, are collectively referred to as "Honda" or "the Honda Defendants."  Honda vehicles sold in the United States contain defective airbags manufactured by the Takata Defendants. The Honda Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Georgia.

**D.    GENERAL FACTUAL ALLEGATIONS**

17.    "Defective Airbags" refers to all airbags (including inflators) manufactured by Takata ("Takata airbags") that are subject to recalls relating to Takata's May 18, 2015 DIRs, and all Takata airbags subject to any subsequent expansion of pre-existing recalls, new recalls, amendments to pre-existing DIRs, or

new DIRs, announced prior to the date of an order granting class certification, relating to the tendency of such airbags to over-aggressively deploy, rupture, or fail to deploy. All "Defective Airbags" Contain the "Inflator Defect."  As a result of the Inflator Defect, Defective Airbags have an unreasonably dangerous tendency to:  (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

18.    As detailed in this Complaint, over the course of seven years Takata and Honda have issued a series of partial, misleading, and ultimately ineffective recalls to address the Defective Airbags.  For reference, the following table identifies the recalled vehicles concerning Honda:

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 08V593 | Honda | Accord | 2001 | Driver |
| Honda | 08V593 | Honda | Civic | 2001 | Driver |
| Honda | 09V259 | Acura | TL/CL | 2002 | Driver |
| Honda | 09V259 | Honda | Accord | 2001-2002 | Driver |
| Honda | 09V259 | Honda | Civic | 2001 | Driver |
| Honda | 10V041 | Acura | CL | 2003 | Driver |
| Honda | 10V041 | Acura | TL | 2002-2003 | Driver |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 10V041 | Honda | Accord | 2001-2002 | Driver |
| Honda | 10V041 | Honda | Civic | 2001-2003 | Driver |
| Honda | 10V041 | Honda | CR-V | 2002 | Driver |
| Honda | 10V041 | Honda | Odyssey | 2002 | Driver |
| Honda | 10V041 | Honda | Pilot | 2003 | Driver |
| Honda | 11V260 | Acura | CL | 2003 | Driver |
| Honda | 11V260 | Acura | TL | 2002-2003 | Driver |
| Honda | 11V260 | Honda | Accord | 2001-2002 | Driver |
| Honda | 11V260 | Honda | Civic | 2001-2003 | Driver |
| Honda | 11V260 | Honda | Civic Hybrid | 2003 | Driver |
| Honda | 11V260 | Honda | CR-V | 2002-2004 | Driver |
| Honda | 11V260 | Honda | Odyssey | 2002-2003 | Driver |
| Honda | 11V260 | Honda | Pilot | 2003 | Driver |
| Honda | 13V132 | Honda | Civic | 2001-2003 | Passenger |
| Honda | 13V132 | Honda | CR-V | 2002-2003 | Passenger |
| Honda | 13V132 | Honda | Odyssey | 2002 | Passenger |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 14V349 | Acura | MDX | 2003 | Passenger |
| Honda | 14V349 | Honda | Accord | 2003 | Passenger |
| Honda | 14V349 | Honda | Civic | 2002-2003 | Passenger |
| Honda | 14V349 | Honda | CR-V | 2002-2003 | Passenger |
| Honda | 14V349 | Honda | Element | 2003 | Passenger |
| Honda | 14V349 | Honda | Odyssey | 2002-2003 | Passenger |
| Honda | 14V349 | Honda | Pilot | 2003 | Passenger |
| Honda | 14V351 | Acura | MDX | 2003-2006 | Driver |
| Honda | 14V351 | Acura | TL/CL | 2002-2003 | Driver |
| Honda | 14V351 | Honda | Accord | 2001-2007 | Driver |
| Honda | 14V351 | Honda | Accord | 2001-2002 | Driver |
| Honda | 14V351 | Honda | Civic | 2001-2005 | Driver |
| Honda | 14V351 | Honda | CR-V | 2002-2006 | Driver |
| Honda | 14V351 | Honda | Element | 2003-2011 | Driver |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 14V351 | Honda | Odyssey | 2002-2004 | Driver |
| Honda | 14V351 | Honda | Pilot | 2003-2007 | Driver |
| Honda | 14V351 | Honda | Ridgeline | 2006 | Driver |
| Honda | 14V353 | Acura | MDX | 2003-2005 | Passenger |
| Honda | 14V353 | Acura | RL | 2005 | Passenger |
| Honda | 14V353 | Honda | Accord | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | Civic | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | CR-V | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | Element | 2003-2004 | Passenger |
| Honda | 14V353 | Honda | Odyssey | 2003-2004 | Passenger |
| Honda | 14V353 | Honda | Pilot | 2003-2005 | Passenger |
| Honda | 14V353 | Honda | RidgeLine | 2006 | Passenger |
| Honda | 14V700 | Acura | MDX | 2003-2005 | Passenger |
| Honda | 14V700 | Acura | RL | 2005 | Passenger |

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 14V700 | Honda | Accord | 2003-2005 | Passenger |
| Honda | 14V700 | Honda | Civic | 2001-2005 | Passenger |
| Honda | 14V700 | Honda | Civic (CNG) | 2003-2004 | Passenger |
| Honda | 14V700 | Honda | Civic Hybrid | 2003-2005 | Passenger |
| Honda | 14V700 | Honda | CR-V | 2002-2005 | Passenger |
| Honda | 14V700 | Honda | Element | 2003-2004 | Passenger |
| Honda | 14V700 | Honda | Odyssey | 2002-2004 | Passenger |
| Honda | 14V700 | Honda | Pilot | 2003-2005 | Passenger |
| Honda | 14V700 | Honda | Ridgeline | 2006 | Passenger |
| Honda | 15V153 | Honda | Accord | 2001 | Driver |
| Honda | 15V153 | Honda | Civic | 2004 | Driver |
| Honda | 15V153 | Honda | Pilot | 2008 | Driver |
| Honda | 15V320 | Honda | Accord | 2001-2007 | Driver |
| Honda | 15V320 | Honda | Civic | 2001-2005 | Driver |
| Honda | 15V320 | Honda | CR-V | 2002-2006 | Driver |

11

| Manufacturer | Recall | Make | Model | Model Years | Side(s) |
|---|---|---|---|---|---|
| Honda | 15V320 | Honda | Element | 2003-2011 | Driver |
| Honda | 15V320 | Honda | Odyssey | 2002-2004 | Driver |
| Honda | 15V320 | Honda | Pilot | 2003-2008 | Driver |
| Honda | 15V320 | Honda | Ridgeline | 2006 | Driver |
| Honda | 15V320 | Acura | CL | 2003 | Driver |
| Honda | 15V320 | Acura | MDX | 2003-2006 | Driver |
| Honda | 15V320 | Acura | TL | 2002-2003 | Driver |

## I.    TAKATA IS A MAJOR MANUFACTURER OF AIRBAG SYSTEMS

19.    Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata has a fully integrated development, design and manufacturing system for its airbags.  Takata makes the entire airbag system, including the collision sensing devices, airbag control units, airbag modules, airbag inflators and airbag cushion materials.

20.    Takata has supplied airbags to automakers for U.S. vehicles and to state and local government purchasers since at least 1983.  Airbags manufactured by Takata have been installed in millions of vehicles in the United States

manufactured by at least ten different automakers, including Honda, Toyota, Mazda, Mitsubishi, Nissan, Subaru, Chrysler, Ford, General Motors and BMW.

## II. TAKATA'S DEFECTIVE AIRBAGS

21.     The driver-side airbag is located in the center part of the steering wheel and is stored inside the steering wheel cover. The passenger-side airbag is typically located above the glove compartment and beneath the dashboard. When a collision occurs, the airbag breaks through a "tear-seam" on the back side of the steering wheel cover or back side of the dashboard as it inflates to protect the front seat occupants.

22.     When collision sensors in the vehicle detect a collision, a signal is sent to the airbag control unit. The signal sent from the sensors to the airbag control unit is processed, and the airbag control unit determines the severity of the impact based on the inputted data. If the airbag control unit determines that an airbag deployment is necessary, it sends a signal to initiate the airbag inflator.

23.     The airbag inflator consists of two components encased in a metal canister: 1) a propellant, and 2) an ignitor. The propellant is pressed into wafers or pellets and is encased in a metal canister. The ignition of the propellant causes an explosive chemical reaction that emits gas, resulting in the rapid inflation and deployment of the airbag cushion.

24.     As the force of the collision reaches the driver or passenger, they begin to move forward.  By this time, the airbags should be fully inflated and ready to receive and restrain the forward movement of the passengers.  The airbag is meant to inflate in a timely fashion in a collision, but only with the force necessary to cushion the occupant from the vehicle's interior.

A.     **Takata's Reckless Choice of an Inexpensive and Dangerous Propellant**

25.     When it began manufacturing airbags in the 1980s, Takata used a compound called sodium azide as the propellant within its inflators.

26.     Takata redesigned its airbags in the late 1990s for the ostensible purpose of making them more compact and reducing toxic fumes earlier models emitted when deployed.

27.     In the mid-1990s, Takata began using a different propellant called 5-aminotetrazole, in part due to toxicity issues associated with sodium azide.

28.     In the late-1990s, Takata's managers pressured its engineers in Michigan to devise a lower cost propellant based upon ammonium nitrate, a compound commonly used in fertilizer and explosives.

29.     Ammonium nitrate is a dangerous material that should not be used in airbags.  It is an inherently volatile and unstable chemical.  Temperature changes as minimal as daily temperature swings are large enough for the ammonium nitrate

to cycle through three of its five crystalline states, adding to its volatility.  It also readily absorbs moisture from the atmosphere.  The chemical's sensitivity to temperature fluctuations and moisture cause it to break down over time, which in turn results in violent detonation or the chemical becoming effectively inert.  As one explosives expert bluntly stated in *The New York Times*, ammonium nitrate "shouldn't be used in airbags," and is better suited to large demolitions in mining and construction.

30.   From the time it began investigating ammonium nitrate in the late 1990s, Takata understood these risks.  Indeed, Takata expressed concern in a patent document in 1995 that an ammonium nitrate propellant would be vulnerable to temperature changes and that its casing "might even blow up."  Takata further recognized that "[o]ne of the major problems with the use of ammonium nitrate is that it undergoes several crystalline phase changes," one of which occurs at approximately 90 degrees Fahrenheit.  If ammonium nitrate undergoes this type of temperature change, the compound may "expand and contract and change shape resulting in growth and cracking" of the propellant, which might cause an airbag inflator to "not operate properly or might even blow up because of the excess pressure generated."

31.     Additionally, Takata admitted in a patent document from 1999 that pure ammonium nitrate is "problematic" because many gas generating compositions made with it are "thermally unstable."

32.     In 1999, as the ammonium nitrate design was being considered, Takata's engineering team in Moses Lake, Michigan, raised objections and pointed to explosives manuals that warned of the risk of disintegration and irregular, overly-energetic combustion.   As one former Takata engineer told a reporter, "ammonium nitrate stuck out like a sore thumb," and yet his team was given only "a couple days" to do its review.

33.     Not surprisingly, other major airbag manufacturers, including Autoliv, Key Safety Systems, and TRW Automotive, have reportedly avoided using ammonium nitrate as a propellant.  Indeed, Takata's representative confirmed at a recent Congressional hearing that Takata is the only major airbag manufacturer that uses ammonium nitrate as a primary propellant in its inflators.

34.     The only conceivable advantage to the compound for an airbag manufacturer, according to the expert quoted in *The New York Times*, is that it is "cheap, unbelievably cheap."   Indeed, Takata had originally planned to use tetrazole as its propellant, which was not only more stable than ammonium nitrate, but also yields other desired benefits, such as being more environmentally friendly.

But tetrazole was too expensive for Takata, and executives ultimately pressured engineers in Michigan to develop a cheaper alternative.

35.    Takata began receiving complaints regarding the Inflator Defect shortly after introducing the redesigned airbag to the market, and those complaints continued to multiply over the years.   Nevertheless, rather than switch to the compound it knew would be safer, even if more expensive, Takata recklessly opted to try, over the course of many years, to stabilize a compound that chemically resists stabilization.

36.    For example, in a 2006 patent application, Takata discussed the need to test the performance of ammonium nitrate at various extreme temperatures because it is an unstable chemical, and these tests could reveal many problems, including "over-pressurization of the inflator leading to rupture."   The 2006 patent document purportedly contained a fix for that sort of rupturing.

37.    Notably, the alleged fix in 2006 came *after* a rupture incident in 2004 that caused an injury, and incidents continued to mount after that time as well. Takata submitted a patent application with purported fixes as recently as 2013. These ongoing, albeit unsuccessful, efforts show that Takata knew its design was problematic.

### B.   Takata's Knowledge of the Airbag Defects

38.     Takata's airbag manufacturing operations were actually aware of the defects plaguing Takata airbags.  Takata experienced persistent and glaring quality control problems it encountered in its manufacturing operations.  The Takata plants that manufactured the airbags at issue include the plants located in Moses Lake, Washington, LaGrange, Georgia, and Monclova, Mexico.   These plants also manufacture airbag inflators.

39.     At a House hearing in December 2014, Hiroshi Shimizu, Takata's Senior Vice President for Global Quality Assurance, admitted:  "We considered it a main contribution to the problem is [sic] the high temperature and absolute humidity, together with age of the products and probably maybe a combination with manufacturing issues."   Nonetheless, Mr. Shimizu claimed that Takata still had not determined the root cause of the defect: "At this moment, we don't have the root cause.  We know the factors may contribute to this problems [sic], so that is why we are still researching these inflators collected from regions."  Executive Vice President of Honda North America, Rick Schostek, echoed that point at the House hearing: "we have theories, but we don't know the cause . . . ."

40.     Mr. Shimizu grossly understated the problem. Starting in 2001, engineers at the Monclova, Mexico plant identified a range of problems, including faulty welding and rust, which they said could have caused inflators to fail.

Between 2001 and 2003, Takata struggled with at least 45 different inflator problems, according to dozens of internal reports titled "potential failures" and reviewed by *Reuters*.

41.     On at least three occasions between 2005 and 2006, Takata engineers struggled to eliminate leaks found in inflators, according to engineering presentations.   In 2005, Shainin, a U.S. consulting firm, found a pattern of additional problems.

42.     Underscoring Takata's reckless use of ammonium nitrate, on March 31, 2006, the Monclova, Mexico plant was rocked by violent explosions in containers loaded with propellant, leaving at least a dozen workers injured.

43.     Apparently, not even that terrible incident could prompt serious and lasting improvements.   In a February 2007 email to multiple colleagues, one manager stated that "[t]he whole situation makes me sick," referring to Takata's failure to implement checks it had introduced to try to keep the airbags from failing.

44.     Takata engineers also scrambled as late as 2009 to address its propellant issues after "inflators tested from multiple propellant lots showed aggressive ballistics," according to an internal presentation in June 2009.

45.     Based on internal Takata documents, Takata was struggling to meet a surge in demand for its airbags.  Putting profits ahead of safety, Takata exhibited

shoddy and reckless behavior in the handling of its ammonium nitrate propellant. In March 2011, a Takata supervisor at the Monclova plant sent an e-mail to other employees stating: "A part that is not welded = one life less, which shows we are not fulfilling the mission."  The title of the e-mail was "*Defectos y defectos y defectos*!!!!"  This shoddy and reckless attitude permeated all of Takata's operations and facilities.

46.     Yet, handling problems at Takata facilities persisted: another manager urged employees to examine the propellant visible in a cross section of an airbag inflator, noting that "[t]he propellant arrangement inside is what can be damaged when the airbags are dropped. . . .  Here you can see why it is important to handle our product properly."  A 2009 presentation of guidelines on handling inflators and airbag units also stressed the dangers of mishandling them.  The presentation included a link to a video that appeared to show side-curtain airbags deploying violently, sending the inflator hurtling into the car's cabin.  (The inflator itself does not rupture in that video.)

47.     Despite knowing it was shipping potentially deadly products, Takata resisted taking back damaged or wet airbag modules, in part because Takata struggled to keep up with a surge in demand for its airbags through the early and mid-2000s as it won big new clients like General Motors.

48.    Moreover, while Defendants, and particularly Takata, had previously assured the public that the Defective Airbags had been remedied and that the new airbags being placed in recalled vehicles were safe, in fact, GM was recently required to recall model year 2013 and 2014 Chevy Cruze vehicles because of the risk of the Takata airbags rupturing.   And Takata has now admitted that replacement airbags placed in recalled vehicles are defective as well, and cannot assure the public that replacement inflators containing ammonium nitrate are safe and not prone to rupture.

## III.    TAKATA AIRBAG FAILURES AND DEFENDANTS' INADEQUATE REACTION

### A.    Early Incidents and "Secret Testing" (2003-2008)

49.    Honda was among the first automakers to use Takata's new air bags, and installed them in some models beginning in 1998.  Since then, Takata airbags containing the Inflator defect have been installed in vehicles manufactured by at least ten automakers.

50.    On November 1, 2003, Charlene Weaver of Arizona—one of the least humid states in the country—was a passenger in a 2004 Subaru Impreza when she was killed in a Takata airbag-related accident.  As summarized in a later section of this Complaint, her car was not recalled until May 2014, more than a decade later.

51.    Also, in 2003, an inflator ruptured in a BMW in Switzerland, prompting a January 2004 investigation by Takata and BMW.  That investigation took place at a Takata facility in Michigan, and involved an inflator sold to BMW,

21

Honda, and Toyota.  The testing was ordered by a senior Takata executive, and the results indicated improper welding and incorrect installation of chemical propellant wafers.

52.    In 2004, a Takata airbag violently exploded in a Honda Accord in Alabama, shooting out metal fragments and injuring the car's driver.  Honda was notified of the incident, and at least one Takata employee recalls being told that Honda examined the part before turning it over to Takata.  Takata reported back to Honda that it was unable to find a cause for the incident.  Ultimately, the companies deemed the incident "an anomaly," and conducted no further investigation or analysis to the public's knowledge.  Notably, Honda and Takata did not issue a recall or even involve federal safety regulators beyond completing a reporting form in a cursory and incomplete manner.

53.    Yet, by this time, Takata was aware of the broad problems associated with its choice of unstable and dangerous ammonium nitrate as a propellant.  As noted above, between 2001 and 2003, internal Takata reports titled "potential failures" showed that Takata struggled with at least 45 different inflator problems, and that, in 2002, the Monclova plant recorded 60 to 80 defects for every million inflators shipped to automakers—six to eight times beyond Takata's quality control limit.  In light of this accumulated knowledge, Takata's dismissal of the explosion as an anomaly without further study was reckless at best.

54.     Even as it downplayed the incident publicly, engineers at Takata's American headquarters in Auburn Hills, Michigan, began conducting secret tests on 50 airbags it had retrieved from scrapyards.  The tests were conducted by Al Bernat, Takata's then-vice president of engineering, and took place over weekends and holidays during the summer of 2004.

55.     Steel inflators in at least two of the airbags cracked during the tests, a condition which can lead to rupture.  Takata engineers theorized that welding problems made the inflator vulnerable to splitting and rupturing.  The result was so startling that engineers began designing possible fixes in anticipation of a recall.

56.     But Takata executives discounted the 2004 test results and ordered the lab technicians to delete the test data from company computers and to dispose of the airbag inflators.  Prototypes of design alternatives were also trashed.  One former Takata employee stated that "[a]ll the testing was hush-hush. . . .  Then one day, it was, 'Pack it all up, shut the whole thing down.'  It was not standard procedure."

57.     Takata did not disclose these tests and continues to deny they occurred.  In regulatory filings, Takata has stated instead that it began testing Defective Airbags in 2008.  Because Honda and Takata agreed to describe the 2004 incident in Alabama as an "anomaly," and because Honda and Takata were communicating about the defective inflators by 2004, Plaintiff alleges, upon

information and belief, that Honda was aware of Takata's secret testing that occurred shortly after the Honda airbag explosion.

58.     In June and August of 2007, Honda notified Takata of three additional airbag explosion incidents.   All three accidents involved metal fragments propelling into the faces and bodies of car passengers upon deployment of the airbags.   As with the 2004 incident, Honda did not initiate a recall or provide information about the ruptures to federal investigators.   Rather, it callously risked vehicle occupants' safety as it purportedly awaited a failure mode analysis being conducted by Takata.

59.     After the 2007 incidents, Honda and Takata began another internal investigation, including a survey of inflators.   Starting in late 2007 or early 2008, Honda began collecting inflators returned to dealers for reasons unrelated to the exploding-airbag defect, and sent them to Takata for investigation, all without informing vehicle owners or regulators.   Honda also collected inflators from scrap yards for the same purpose.

60.     Takata began what became a year-long study of the Inflator Defect. Takata's engineers ultimately concluded that workers at a Takata factory in Monclova, Mexico, had left out moisture-sensitive explosives on the plant floor, making them prone to overly energetic combustion.   Takata advised Honda that by November 2002, it had corrected any such handling deficiencies.

61.    The victims of the four Honda incidents – one in 2004 and three in 2007 – brought legal claims against Honda, which the automaker settled on a strictly confidential basis.  While Honda filed a standard report with U.S. safety regulators for each of these four incidents, its reports tellingly omitted the most critical detail of these incidents: the Defective Airbags posed a substantial risk of serious injury or death when deployed.  In later submissions to NHTSA, Honda admitted that it had received still other complaints in this timeframe:

a.    On July 25, 2008, Honda received an unidentified complaint related to Takata driver airbag ruptures.

b.    On September 11, 2008, Honda received notice of a complaint regarding "unusual" driver airbag deployment.

**B.    The 2008 Honda Recall (08V-593)**

62.    Takata shared the results of the inflator survey analysis with Honda on October 2, 2008.  That analysis indicated an airbag inflator problem.  Honda and Takata concluded, however, that only a small number or inflators were affected.

63.    As a result, Honda issued a recall, but only for 3,940 vehicles in the United States.  This November 2008 recall involved certain 2001 Honda Accord and Civic vehicles with airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").  Honda reported that it learned of the problem from a

June 2007 claim, and falsely assured regulators that it had identified all "possible vehicles that could potentially experience the problem."

64.     Even as Takata and Honda advocated a minuscule recall focused on older models—less than 0.1 percent of the total Honda recall to date—at about the same time, in April 2009, Takata engineers scrambled to repair a flaw in a machine at the Monclova, Mexico, factory that made the airbag propellant more volatile, according to materials from a company presentation given that year.

**C.     Additional Incidents (2008-2009)**

65.     Additional incidents took place after the 2008 Recall that underscored its inadequacy:

a.     On April 27, 2009, six months after the limited 2008 recall, a Takata airbag in Jennifer Griffin's 2001 Honda Civic exploded after a minor accident in Orlando, Florida.   The explosion sent a two-inch piece of shrapnel from the Defective Airbag flying into Ms. Griffin's neck causing serious injury.   Ms. Griffin's car was not part of the 2008 Recall.   Honda received notice of the incident no later than September 2009, and likely months earlier in July towards the beginning of its correspondence with NHTSA regarding the upcoming 2009 recall.

On May 28, 2009, 18-year-old Ashley Parham of Oklahoma was killed while driving a 2001 Honda Accord when the Takata airbag in her car

exploded after her car bumped another car in a parking lot. While she apparently survived the accident itself, the metal shrapnel that shot out of the exploding Defective Airbag sliced open her carotid artery and she bled to death. Ms. Parham's car was not part of the 2008 Recall.

Another Takata airbag-related incident took place in Virginia on June 9, 2009, and Honda ultimately settled a lawsuit brought by the decedent's family. According to one of its submissions related to the upcoming 2009 Recall, Honda received three additional Takata airbag unusual deployment complaints on July 27, July 31, and August 31, 2009.

66. With incidents mounting, Takata and Honda revisited the issue yet again. In June 2009, Takata reported to Honda that the defective airbag components had been made at its factory in Moses Lake, Washington. At the time, Takata engineers explained to Honda that between 2000 and 2002, a flaw in a machine that presses air bag explosives into wafers had made the explosives unstable. The Takata engineers further explained to Honda that with the defective air bags, explosives in the metal inflator, which would normally burn down and produce the nitrogen gas to inflate the air bag, instead burn aggressively and cause the inflator to burst, shooting hot fragments through the air bag's fabric.

67. After two years of investigation, Honda and Takata found that a machine at Takata's Moses Lake factory in Washington state had failed to

compress chemicals firmly enough.  That left the inflators vulnerable to moisture, potentially causing the bags to inflate more forcefully than they were supposed to. At that time, Takata also acknowledged that the defect covered a wider range of vehicles than initially estimated, but claimed that the plant had made numerous upgrades to its machinery in late 2002, which it thought had improved the quality of its explosives.

68.    In June 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

### D.    <u>The 2009 Honda Recall (09V-259), and Honda's and Takata's Misleading Reporting to NHTSA</u>

69.    As a result of Takata's June 2009 follow-up report and the additional claims of "unusual deployments," on June 30, 2009, Honda issued another recall, this one covering 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").  Thus, it was only two months *after* Ms. Parham's death that Honda expanded its 2008 Recall to include the model she drove.

70.    In August 2009, NHTSA's Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."

71.    NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and

explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V-593 recall population."

72.     NHTSA's Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual driver airbag deployments" and Honda's investigative efforts.

73.     In Honda's September 16, 2009 reply to NHTSA, the automaker said that its information about the "unusual driver airbag deployments" came from Takata: "[w]e understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."

74.     Honda also reported, based on information from Takata, that the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators."  Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "a specific production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.

75.     Honda also disclosed to NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls.  Honda also finally informed

NHTSA about the 2004 incident involving an "unusual deployment" of the vehicle's airbag. Honda claimed that it "only recently [was] reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."

76. Through a November 20, 2009 request, NHTSA also sought information from Takata. Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response"). Both responses provided vague and misleading information about the seriousness of the problem.

77. Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls, but cited differences in the production processes between the lots.

78. Takata also asserted that the defects only existed in specific lots manufactured between certain dates. It claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000, and that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001. Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata admitted, its records did not have that information. Instead, it gave just the manufacturing dates.

79.    In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press (the "Stokes press") in a single plant.  Takata further asserted that while it did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore, Takata is convinced that the inflators sold [redacted] contain no safety-related defect."

80.    Takata wrote in its Full Response that it "believed - [redacted] - that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion.  This recommendation, as well as the analysis that supported it, was presented to Honda on June 12, 2009."

81.    In both the Partial Response and the Full Response, Takata stated: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by Recalls 08V-593 [in 2008] and 09V-259 [in 2009] to any customers other than Honda.  The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda."  This statement would prove to be false.

82.     Based on Takata's and Honda's misrepresentations and omissions concerning the nature and scope of the Inflator Defect, NHTSA closed its investigation into the Takata airbags on May 6, 2010.

83.     In the months following NHTSA's 2009/2010 request for information, Takata engineers came up with yet another purported explanation for the ruptures; specifically, that in September 2001, machine operators at the Moses Lake plant could have inadvertently switched off an "auto reject" function that weeded out poorly made explosives that can become unstable.  However, Takata assured Honda at the time that, "as part of the upgrades at that plant, in September 2002, the supplier had added a locking mechanism that prevented workers from turning the auto-reject function off.

84.     The *Wall Street Journal* further reported that "Honda and Takata discovered more problems.  At Moses Lake, employees had switched off a mechanism that automatically checked whether the right amount of propellant was loaded in inflators; at a plant in Monclova, Mexico, a dehumidifier that kept parts dry hadn't been turned on.  At times poor record-keeping meant Honda and Takata couldn't figure out which cars had defective bags."

### E.     The 2010 Recall (10V-041) and Honda's Shifting Explanations

85.     Honda's and Takata's ongoing cover-up and ineffective recalls continued to cost lives.  In December 2009, a 2001 Honda Accord driven by Gurjit

Rathore, 33, hit a mail truck in Richmond, Virginia.  Her air bag exploded, propelling shrapnel into her neck and chest, and she bled to death in front of her three children, according to a lawsuit filed by her family.

86.    In February 2010, only months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles across a number of models ("2010 Recall").

87.    Honda's explanation for the airbag defects changed yet again, but still misleadingly focused on the manufacturing process.  Honda explained that of the two different manufacturing processes used in the preparation of an airbag propellant, one process was within specification and the other was not.  Honda's expanded recall supposedly reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

**F.    Mounting Honda Recalls (2011-2012)**

88.    In April 2011, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions ("2011 Recall"). Honda was unable to determine which vehicles contained the defective replacement parts, forcing it to recall all 833,277 vehicles that might have had the part installed.

89.     According to documents submitted with the 2011 Recall, on August 15, 2011, Honda became aware of an August 1, 2011, "energetic deployment of a driver's airbag inflator that was outside of the prior range of suspect inflators."  On September 2, 2011, Honda and Takata began an analysis of these so-called "outside of range" occurrences.

90.     Underscoring Takata's ongoing quality control failures, on or about September 14, 2011, Honda and Takata began investigating the possibility that airbag inflator propellant lots were mixed during airbag inflator assembly, prompting further analysis of airbag inflator production records for the period when propellant was processed by the suspect method.

91.     Honda reported its death and injury tallies to regulators only in a confidential submission in December 2011, when it issued a fifth limited recall for the rupture defect, according to NHTSA.  That recall expanded Recall No. 11V-260 (April 2011), to include an additional 272,779 Honda and Acura vehicles.  The expanded recall also included another 640 airbags sold as replacement parts; however, because Honda could not determine on which vehicles the 640 replacement air bags were installed, an additional 603,241 vehicles had to be recalled.  Collectively, 1.7 million Honda and Acura vehicles had been recalled by the end of 2011 because they contained Takata-manufactured airbags.

92.     In the meantime, Honda and Takata quietly continued their internal investigation into the Inflator Defect.  According to Honda, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible." The collection began on March 14, 2012, and by November 21, 2012, Honda in fact found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

93.     Notably, in or about December 2012, NHTSA's Office of Defects Investigation ("ODI") notified Honda that there were numerous injury or death incidents listed on a spreadsheet Honda provided to NHTSA in connection with NHTSA's Takata investigation that were *not* previously provided to NHTSA under the early warning reporting system established by the TREAD Act.  In late 2014, Honda ultimately admitted that it failed to report 1,729 serious accidents resulting in injuries or deaths to NHTSA between 2003 and 2014.  Eight of these incidents involved Takata airbags.  In January 2015, Honda agreed to pay a $70 million fine for this startling failure.

## G. **Takata's Belated Admissions of Broader Defects and the 2013 Recall (13V132)**

94.     By 2013, it became clear to federal regulators and Defendants were already aware that the Defective Airbag issue was far more widespread than Takata or Honda initially reported to NHTSA.

95.     On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  By March 6, 2013, Honda had learned that:

> A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant.  Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.

96.     In February and March 2013, Takata notified Nissan and Mazda that it was investigating airbag quality.  Separately, Takata advised Honda "of another potential concern related to airbag inflator production that could affect the performance of these airbag modules."

97.     On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for an additional 561,422 vehicles that could be affected by the following part defect:

> In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure. If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture. In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant.

98.     On April 11, 2013, Takata filed a Defect Information Report titled "Certain Airbag Inflators Used as Original Equipment."  In that report, Takata

misleadingly attributed the defect to isolated manufacturing flaws, describing the

Defective Airbags as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force. . . .   In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture conditions. Those wafers could have absorbed moisture beyond the allowable limits . . . .  In both cases, the propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an air bag deployment.  This could create excessive internal pressure within the inflator, and the body of the inflator could rupture.

99.    In April 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of 3.6 million vehicles containing Takata airbags.

100.   By 2014, the incident rate picked up even more dramatically with over a dozen incidents involving injury or fatalities in Nissan, Honda, Toyota, Chevy, and Mazda vehicles, taking place in a variety of regions in the country, from humid Puerto Rico to far drier Massachusetts and California.

101.   With accidents proliferating, Takata met with NHTSA officials on May 20, 2014 to provide information about inflator ruptures not covered by previous recalls.  At that meeting, Takata noted that "all six of the potentially-relevant rupture incidents had occurred in either Florida or Puerto Rico."  The referenced incidents include both passenger and driver side airbags.   This

statement omitted one of the earliest incidents, Ms. Weaver's 2003 accident in Arizona, as well as later incidents in drier locales, as noted above.

102.   On June 11, 2014, NHTSA's ODI published an ODI Resume for a preliminary evaluation of Investigation No. PE 14-016.  That document stated that NHTSA was opening an investigation "in order to collect all known facts from [Takata] and the vehicle manufacturers that it believes may have manufactured vehicles equipped with inflators produced during the same period as those that have demonstrated rupture events in the field."

103.   Also on June 11, 2014, Takata informed NHTSA that it "believes that an [sic] number of the inflators identified above were provided to the following vehicle manufacturers for use in vehicles sold in the United States (the manufacturers are listed in alphabetical order): BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota."  Takata's June 11, 2014 letter further stated:

> If we determine that any of those inflators were sold to other vehicle manufacturers, we will let you know promptly. Takata is not certain which models or model years of vehicles are equipped with the subject inflators, and it does not know how many of those vehicles were sold in or are registered in the States to be covered by the requested field actions. That information will need to be obtained from the affected vehicle manufacturers.

104.   On June 20, 2014, Honda issued additional recalls for a total of nearly 4.5 million Honda and Acura vehicles that contained defective Takata airbags.

105.   By the end June 2014, the number of vehicles that had been recalled due to defective Takata airbags had increased to over 6 million.   The Honda Defendants, however, had still not recalled all of the vehicles containing Defective Airbags.

106.   On July 8, 2014, Honda expanded a "two million vehicle air bag recall by as many as one million more vehicles in California."   The *New York Times* reported that "[a] defective inflator could explode in a crash, sending shards of its metal casing into the passenger compartment.   The inflator was made by Takata Corporation, which has said the propellant inside the inflator was not properly prepared and was too powerful."

107.   On August 18, 2014, *The New York Times* reported that NHTSA had "deepened" its investigation of Honda's airbags:   "Federal regulators have intensified an investigation into the inadvertent deployment of side air bags on 2008 Honda Accords," as they were "concerned that the side air bags along the outer edges of the ceiling and the seats may deploy when a door is slammed."

108.   In August 2014, Honda issued yet another recall of Honda and Acura vehicles, "its ninth for the defect – bringing to six million the total of recalled Honda and Acura vehicles."

109.   However, the tragic pattern of mounting casualties in the face of Defendants' sluggish response continued.

**H.** **Forced National Recall and Takata's Admission of a Defect (2014-2015)**

110.  On October 22, 2014, NHTSA expanded the recall list to cover ten automakers and 7.8 million vehicles, over 5 million of which were Hondas.  In a Consumer Advisory dated October 22, 2014, NHTSA sent an urgent warning to the owners of the now "7.8 million Affected Vehicles":

> The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday.  The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

111.  On October 29, 2014, NHTSA sent letters to ten automakers regarding the safety risks posed by the Takata airbags.  The letter stated that "[t]he ongoing cooperation of all manufacturers who have recalled vehicles is essential to address this safety risk," and that the "NHTSA team is engaged with you in critical work to better understand the failures and take action to remedy the safety risk…." NHTSA's letter also asked the automakers to provide NHTSA with information as to their recall process, urged a faster response from them, and stated that "more can and should be done as soon as possible to prevent any further tragedies."

112.   On October 30, 2014, NHTSA ordered the airbag supplier Takata to turn over documents and answer questions under oath related to defective airbag inflators.   The order demanded that Takata turn over records related to the production, testing and subsequent concerns raised internally and by automakers over the airbags, as well as communications between the company and automakers about defect concerns.

113.   Also on October 30, 2014, NHTSA's ODI published an ODI Resume for Investigation No. AQ 14-004.  That document stated that NHTSA had opened an investigation "in order to investigate the extent and scope of Honda's reporting failures, as well as the reason(s) for such failures and the steps being taken by Honda to assure full compliance with TREAD reporting requirements."

114.   On November 3, 2014, NHTSA issued another Special Order, this time demanding documents from Honda to determine what and when the company knew about deaths and injuries caused by Takata's airbags.

115.   The U.S. Department of Justice is also investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.  On November 13, 2014, the United States District Court for the Southern District of New York issued a federal grand jury subpoena to Takata and Honda.

116.   By November 18, 2014, it was clear to NHTSA that even the extensive recalls to date were insufficient.   NHTSA therefore demanded a national recall of Chrysler, Ford, Honda, Mazda, and BMW vehicles with certain driver airbags made by Takata.   It simultaneously issued its second Special Order to Takata compelling it to provide, under oath, documents and detailed information on the propellant used in Takata's inflators.   At a hearing of the United States Senate Committee on Commerce on November 20, 2014, Takata Senior Vice President Hiroshi Shimizu refused to support a national recall.

117.   Takata reiterated its refusal at a hearing before the U.S. House of Representatives Energy and Commerce Subcommittee on December 3, 2014, claiming there was "not enough scientific evidence" to support a national recall. Yet, as NHTSA Administrator David Friedman stated, "when we saw real-world incidents on the driver side, one in California, we pushed Honda to make sure that their recall covered that region.   Then very recently, we came aware of a driver side incident in North Carolina. With six total incidents, two of which are outside that region, we can no longer support a regional recall.   Our policy is clear: Recalls must be nationwide unless the manufacturers can demonstrate that they are regional.   With the new data, it is clear they can no longer demonstrate that the region that was used before was appropriate for driver side airbags."

118.   The geographic scope of the incidents undermined Takata's focus on humidity as the defining contributor to the dangerous ruptures.  As Mr. Friedman explained, "[o]ne of the most frustrating parts about this is that neither the automakers nor Takata have been able to get to the bottom of the root cause on this. We have been pushing them to do so."

119.   As of the December 3, 2014 House hearing, Honda, Ford, Chrysler, and Toyota had all agreed to NHTSA's demand for a nationwide recall, principally for driver side airbags.  Days later, Mazda expanded the geographic scope of its recall.  By December 23, BMW had also agreed to a nationwide recall.

120.   Having neglected the defect for over a decade, the 10 vehicle manufacturers met in December 2014 to "sort out a way to understand the technical issues involved."  A few months later, in March 2015, Honda announced an advertising campaign to promote the recall—a step it could and should have taken a decade ago.  A few days later, Honda announced another 105,000 vehicles that needed to be recalled (Recall 15V153), consisting of vehicles that should have been part of the 2014 recalls.

121.   Frustrated by Takata's continual foot-dragging, NHTSA imposed a $14,000 per day fine that started on Friday, February 20, 2015, concluding that Takata had not been forthcoming with the information that it is legally obligated to supply, nor cooperative in aiding NHTSA's ongoing investigation.  Days later,

NHTSA demanded that Takata preserve all airbag inflators removed through the recall process.

122.   In response to pressure from NHTSA and private plaintiffs and public scrutiny, Defendants were forced to consult with external explosives and airbag specialists, and performed additional testing on Takata's airbags.   This testing confirmed what Defendants already knew: Takata's airbags containing ammonium nitrate were defective and prone to over-aggressive deployment and rupture.

123.   In light of this testing, Takata was unable to deny the existence of the Inflator Defect any longer.   On May 18, 2015, Takata filed four Defect Information Reports ("DIRs") with NHTSA and agreed to a Consent Order regarding its (1) PSDI, PSDI-4, and PSDI-4K driver air bag inflators; (2) SPI passenger air bag inflators; (3) PSPI-L passenger air bag inflators; and (4) PSPI passenger air bag inflators, respectively.   After concealing the Inflator Defect for more than a decade, Takata finally admitted that "a defect related to motor vehicle safety may arise in some of the subject inflators."   And in testimony presented to Congress following the submission of its DIRs, Takata's representative admitted that the use of ammonium nitrate is a factor that contributes to the tendency of Takata's airbags to rupture, and that as a result, Takata will phase out the use of ammonium nitrate.

124.   Still, even Takata's recent defect admission is inaccurate and misleading, because the Inflator Defect is manifest in each of Takata's inflators

containing ammonium nitrate.   And shockingly, Takata still intends to produce new inflators with ammonium nitrate, even after admitting that such inflators are prone to rupture, and thus create an unacceptable public safety hazard.

125.   Further, in its DIRs, Takata acknowledged that the Inflator Defect is present in inflators that were installed in vehicles as replacement parts through prior recalls, necessitating a second recall of those vehicles.

As a result of Takata's admission that its inflators are defective, an additional 17 million vehicles must be recalled in the United States, pushing the total number of recalled vehicles nationwide over 34 million.   While Takata has records tracking which manufacturers it sold Defective Airbags to, it claims not to have records indicating which vehicles those Defective Airbags were installed in.   Vehicle manufacturers, including Honda, possess those records, however, and are thus in the process of identifying which vehicles must be recalled based on Takata's DIRs, and its corresponding admission that its inflators are defective.   Still, Takata refuses to immediately conduct nationwide recalls of all airbags containing the Inflator Defect.   While Takata has agreed to participate in a nationwide recall of airbags containing the PSDI, PSDI-4, and PSDI-4K driver-side air bag inflators and SPI passenger-side airbag inflators, it is still insisting on regional, phased recalls of vehicles equipped with its PSPI-L passenger air bag inflators, PSPI passenger air bag inflators.

126.   In the meantime, the risk of injury remains very real, and is exacerbated by Defendants' poor execution of the recalls.

a.   On July 28, 2014, Francisco Demarco died due to a Takata airbag rupture while riding in the passenger seat of a 2007 Honda Accord in Palm Beach County, Florida.

b.   On November 19, 2014, Racquel Hudson suffered extensive first and second degree burns due to a Takata airbag rupture while driving her 2004 Honda Odyssey in San Antonio, Texas.

c.   On January 18, 2015, Carlos Solis was killed in an accident in Houston, Texas, and a ruptured Takata airbag was the suspected cause.

127.   Over the past 13 years that Takata has known there was a problem with the safety of its airbags, there have been at least six deaths and 139 injuries linked to defective Takata airbags.  As detailed above, the incidents date back to at least 2003, and involve vehicles made by Acura, BMW, Chevrolet, Honda, Mazda, Subaru, and Toyota.  Each of the Defendants knew of the Inflator Defect by virtue of these incidents.

128.   The Defendants were on further notice due to unusual Takata airbag deployments that should have prompted further inquiry into the airbags' fitness for use.  A review of publicly-available NHTSA complaints shows dozens of incidents of Takata airbags inadvertently deploying in vehicles, an event that, on information

and belief, could be tied to the unstable propellant.  These complaints started as early as September 2005, and involve vehicles manufactured by Acura, BMW, Dodge, Ford, Mitsubishi, Pontiac, Subaru, and Toyota.  Some of these incidents showed still further signs of the Inflator Defect, including airbags that deployed with such force that they caused the windshield to crack, break, or shatter, and others that caused unusual smoke and fire (or both).

<u>**ALLEGATIONS RELATING TO PLAINTIFF'S ACCIDENT**</u>

129.  On November 14, 2013, Sumatee Ramroop was operating a 2001 Honda Civic (VIN # 1HGES26771L010591) traveling westbound on Annistown Road in Snellville, Georgia.  At approximately 7:56 a.m., as Mrs. Ramroop was traveling through the intersection of Annistown Road and Rockbridge Road, she collided with a vehicle that had failed to yield turning left off of Rockbridge Road.

130.  During the incident, the driver-side airbag inflator exploded and caused the airbag to deploy with excessive force and at an excessive rate of speed, causing Mrs. Ramroop to suffer serious injuries to her neck and back.

131.  As a result, Mrs. Ramroop was taken from the scene of the collision to Gwinnett Medical Center by first responders.

132.  Mrs. Ramroop required hospitalization and surgical intervention to treat her injuries.  She underwent a thoracolumbar fusion to treat her spinal

injuries, and was thereafter required to use a lumbar corset and walker for several months.

133.   The subject 2001 Honda Civic has been included in and made a part of Honda's recall of vehicles arising from defects in the Takata airbag system.

134.   This occurred during a collision that happened during the ordinary use of the vehicle at issue, and that was the type of collision that is reasonably foreseeable in the design of a vehicle and its airbag system.

135.   Upon information and belief, the airbag system in the vehicle at issue was in the same essential condition as it was at the time that it left the vehicle manufacturer's control.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

136.   Upon information and belief, Takata has known of the Inflator Defect in its airbags since at least the 1990s.  Defendant Honda has known of the Inflator Defects in the Takata airbags in Honda's vehicles since 2004.  Defendants have concealed from or failed to notify Plaintiff and the public of the full and complete nature of the Inflator Defect.

137.   Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate

or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

138.   Any applicable statute of limitation or statute of repose has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**Estoppel**

139.   Defendants were and are under a continuous duty to disclose to Plaintiff the true character, quality, and nature of their vehicles.   They actively concealed the true character, quality and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics and performance of the vehicles.   Plaintiff reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment of these facts.   Based on the foregoing, Defendants are estopped from relying on any statutes of limitation or statutes of repose in defense of this action.

**Discovery Rule**

140.   The causes of action alleged herein did not accrue until Plaintiff discovered that the subject vehicle had the defective airbags.   Plaintiff, however, had no realistic ability to discern that the vehicle was defective until – at the earliest – after either the defective airbag deployed or the subject vehicle was

recalled.  Even then, Plaintiff had no reason to discover her cause of action because of Defendants' active concealment of the true nature of the defect.

### RE-ALLEGATION AND INCORPORATION BY REFERENCE

141.   Plaintiff realleges and incorporates by reference all of the preceding paragraphs and allegations of this Complaint as though fully set forth in each of the following Claims for Relief.

### CLAIMS FOR RELIEF

### COUNT 1
### (NEGLIGENCE – TAKATA DEFENDANTS)

142.   This is a cause of action for negligence, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action.

143.   **Duty:**  The Takata Defendants had a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing and distribution of the airbag systems utilized in the subject vehicle in order to provide a reasonable degree of occupant protection in foreseeable collisions and in order to avoid exposing the occupants to unnecessary and unreasonable risks.

144.   **Breach:**  The Takata Defendants breached that duty both by acting in a way that a reasonably careful designer and manufacturer of air bags would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of airbags would take under like circumstances.

50

Specifically, the Takata Defendants breached that duty in one or more of the following ways:

    a. By designing an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

    b. By designing an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

    c. By designing an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

    d. By designing an airbag inflator with a propellant that, due to its instability, fails to deploy in collisions in which it should deploy;

    e. By designing an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

    f. By otherwise designing a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks.

    g. By failing to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

    h. By failing to use due care in the manufacturing and assembly of the chemical compounds used as the propellant in the air bag inflator;

    i. By failing to use due care in the manufacturing and assembly of the air bag inflators that house the propellant;

j.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

k.  By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

l.  By failing to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys, or will fail to deploy, in a reasonably foreseeable collision or other reasonably foreseeable use;

m.  By failing to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

n.  By failing to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

o.  By failing to take appropriate steps to cause the recall of the airbag inflator.

145.  **Causation:**  As a direct and proximate result of the negligence of the Takata Defendants, the Takata airbag in the subject vehicle exploded and deployed in an abnormal, aggressive or violent way.  This caused or substantially contributed to causing the Plaintiff to suffer severe neck and back injuries, requiring Plaintiff to undergo thoracolumbar fusion and extensive physical therapy, property damage, and/or other losses.  But for the Takata Defendants' negligence, these injuries, damages and losses would not have occurred.

146.  **Damages:**  The Plaintiff has suffered severe neck and back injuries, including a thoracolumbar fusion, property damage and other losses and seeks all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to the subject vehicle or other personal property.

147.  **Punitive Damages:**  The conduct of the Takata Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Takata, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Takata to minimize the seriousness and scope of the problem.  Such conduct justifies punitive damages against the Takata Defendants.

WHEREFORE, the Plaintiff demands judgment against the Takata Corp. and TK Holdings for all compensatory damages that she is entitled to under

applicable state law and for punitive damages under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## COUNT 2
### (STRICT LIABILITY – TAKATA DEFENDANTS)

148.   This is a cause of action for strict products liability, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the Plaintiff's action or the statutory law of such state, including but not limited to O.C.G.A. § 51-1-11.

149.   **Product:**  The Takata Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce the airbag systems, including the air bag inflator, utilized in the subject vehicle.  The Takata Defendants knew that the ultimate users and occupants of the vehicles could not properly inspect the airbags for defects or dangers and that the detection of such defects or dangers would be beyond the capabilities of such persons.

150.  **Defects:**   The Takata airbags were defective and unreasonably dangerous in their design because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and

there were alternative, safer designs that were both technologically and economically feasible. Specifically, the Takata airbags were defective and unreasonably dangerous for one or more of the following reasons:

    a. They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

    b. They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

    c. They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

    d. They were designed with an airbag inflator with a propellant that, due to its instability, has the propensity to fail to deploy in collisions in which it would be expected to deploy;

    e. They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

    f. They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

    g. Takata failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

    h. Takata failed to use due care in the manufacturing and assembly of the chemical compounds used as the propellant in the air bag inflator;

    i.  Takata failed to use due care in the manufacturing and assembly of the air bag inflators that house the propellant;

    j.  Takata failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

    k.  Takata failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

    l.  Takata failed to provide adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

    m. Takata failed to provide adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

151. The defects in the Takata airbags were present when the Takata Defendants placed them into the stream of commerce, and the Takata airbags were expected to and did reach the users and consumers without substantial change affecting their condition.

152. **Causation:**  As a direct and proximate result of the defects in the Takata airbags, the Takata airbag in the subject vehicle exploded deployed in an abnormal, aggressive or violent way.  This caused or substantially contributed to causing the Plaintiff to suffer severe neck and back injuries, requiring Plaintiff to undergo thoracolumbar fusion and extensive physical therapy, property damage, and/or other losses.  But for the defects in the Takata airbag, these injuries, damages and losses would not have occurred.

153.  **Damages:**  The Plaintiff has suffered severe neck and back injuries, including a thoracolumbar fusion, property damage and other losses and seeks all damages recoverable under applicable state law, including for (a) bodily injury and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to the subject vehicle or other personal property.

154.  **Punitive Damages:**  The conduct of the Takata Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Takata, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Takata to minimize the seriousness and scope of the problem.  Such conduct justifies punitive damages against the Takata Defendants.

WHEREFORE, the Plaintiff demands judgment against the Takata Corp. and TK Holdings for all compensatory damages that she is entitled to under

applicable state law and for punitive damages under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

### COUNT 3
#### (NEGLIGENCE – HONDA DEFENDANTS)

155.   This is a cause of action for negligence, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Plaintiff's action.

156.   **Duty:**  The Honda Defendants had a duty to use reasonable care in the design, development, testing, manufacture, assembly, marketing and distribution of the subject vehicle manufactured by Honda in order to provide a reasonable degree of occupant protection in foreseeable collisions and in order to avoid exposing occupants to unnecessary and unreasonable risks.

157.   **Breach:**  The Honda Defendants breached that duty both by acting in a way that a reasonably careful designer and manufacturer of vehicles would not act under like circumstances and by failing to take actions that a reasonably careful designer and manufacturer of vehicles would take under like circumstances. Specifically, the Honda Defendants breached that duty in one or more of the following ways:

a.      By designing a vehicle utilizing an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.      By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.      By designing a vehicle utilizing an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.      By designing a vehicle utilizing an airbag inflator with a propellant that, due to its instability, fails to deploy in collisions in which it should deploy;

e.      By designing a vehicle utilizing an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.      By otherwise designing a vehicle utilizing a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.      By failing to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.      By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i.      By failing to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j.      By failing to give appropriate warnings to consumers about the risk that the airbag will deploy with excessive force when it deploys in a reasonably foreseeable collision or other reasonably foreseeable use;

k.      By failing to give appropriate warnings to consumers about the risk that the airbag will cause or contribute to injuries when it deploys, or will fail to deploy, in a reasonably foreseeable collision or other reasonably foreseeable use;

l.      By failing to give appropriate warnings to consumers about other risks of the airbag which Takata knew or should have known are involved in the reasonably foreseeable use of vehicles containing Takata airbags; and/or

m.      By failing to take appropriate steps to recall of the airbag inflator.

158.   **Causation:**  As a direct and proximate result of the negligence of the Honda Defendants, the Takata airbag in the subject vehicle manufactured by Honda exploded and deployed in an abnormal, aggressive or violent way.  This caused or substantially contributed to causing the Plaintiff to suffer severe neck and back injuries, requiring Plaintiff to undergo thoracolumbar fusion and extensive physical therapy, property damage, and/or other losses. But for the Honda Defendants' negligence, these injuries, damages and losses would not have occurred.

159.   **Damages:**  The Plaintiff has suffered severe neck and back injuries, including a thoracolumbar fusion, property damage and other losses and seeks all damages recoverable under applicable state law, including for (a) bodily injury and

any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to the subject vehicle or other personal property.

160. **Punitive Damages:**  The conduct of the Honda Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Honda, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Honda to minimize the seriousness and scope of the problem.  Such conduct justifies punitive damages against the Honda Defendants.

WHEREFORE, the Plaintiff demands judgment against Honda Motor, American Honda, Honda Mfg. and Honda R&D for all compensatory damages that she is entitled to under applicable state law and for punitive damages under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

61

## COUNT 4

## (STRICT LIABILITY – HONDA DEFENDANTS)

161.   This is a cause of action for strict products liability, including design defect, manufacturing defect, and failure to warn, under the common law of the state whose law applies to the underling Personal Injury Track action or the statutory law of such state, including but not limited to O.C.G.A. § 51-1-11.

162.   **Product:**  The Honda Defendants designed, developed, manufactured, marketed, assembled, tested, distributed, sold and placed into the stream of commerce vehicles utilizing the Takata airbag systems.  The Honda Defendants knew that the ultimate users and occupants of the vehicles could not properly inspect the airbags for defects or dangers and that the detection of such defects or dangers would be beyond the capabilities of such persons.

163.   **Defects:**  The Takata airbags in Honda vehicles were defective and unreasonably dangerous in their design because they failed to perform as safely as an ordinary consumer would expect when used as intended or used in a reasonably foreseeable manner, and because the risk of danger in their design outweighed any benefits and there were alternative, safer designs that were both technologically and economically feasible.  Specifically, the Takata airbags utilized by the Honda Defendants were defective and unreasonably dangerous for one or more of the following reasons:

62

a.　　　　They were designed with an airbag inflator that uses a chemical compound as a propellant that is unsafe, unreliable, unstable and/or inappropriate for such commercial use;

b.　　　　They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the canister of the air bag inflator to rupture and expel metal pieces and shrapnel;

c.　　　　They were designed with an airbag inflator with a propellant that has the propensity to explode violently and cause the airbag to deploy abnormally, aggressively and/or with excessive force;

d.　　　　They were designed with an airbag inflator with a propellant that, due to its instability, has the propensity to fail to deploy in collisions in which it would be expected to deploy;

e.　　　　They were designed with an airbag inflator that allows humidity, moisture, temperature fluctuations or other environmental factors to interact with the propellant and alter the nature of the propellant in ways that will cause the air bag to perform improperly and in a dangerous manner;

f.　　　　They were otherwise designed with a propellant, an air bag inflator or an air bag system that exposed occupants to unnecessary and unreasonable risks;

g.　　　　Honda failed to adequately test the airbag system, airbag inflator and propellant to ensure that it provided occupants with reasonable safety in foreseeable collisions;

h.　　　　Honda failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant were manufactured and assembled in a safe manner;

i.　　　　Honda failed to implement effective quality control procedures to ensure that the airbag system, airbag inflator and propellant functioned as intended and provided occupants with reasonable safety in foreseeable collisions;

j.      Honda failed to provide adequate warnings to consumers about the propensity of the airbag to cause or contribute to injuries when it deploys in a collision or otherwise; and/or

k.      Honda failed to provide adequate warnings to consumers of the propensity of the airbag to deploy with excessive force.

164.   These defects in the Takata airbags in the Honda vehicles were present when the Honda Defendants placed their vehicles into the stream of commerce, and both the vehicles and the Takata airbags in them were expected to and did reach the users and consumers without substantial change affecting their condition.

165.   **Causation:**   As a direct and proximate result of the defects in the Takata airbags in Honda vehicles, the Takata airbags in the subject vehicle manufactured by Honda exploded and deployed in an abnormal, aggressive or violent way.   This caused or substantially contributed to causing the Plaintiff to suffer severe neck and back injuries, requiring Plaintiff to undergo thoracolumbar fusion and extensive physical therapy, property damage, and/or other losses.   But for the defects in the Takata airbags in Honda vehicles, these injuries, damages and losses would not have occurred.

166.   **Damages:**   The Plaintiff has suffered severe neck and back injuries, including a thoracolumbar fusion, property damage and other losses and seek all damages recoverable under applicable state law, including for (a) bodily injury and

any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconveniences or loss of capacity for the enjoyment of life, experienced in the past or to be experienced in the future; (b) the expense of hospitalization, medical and nursing care and treatment necessarily or reasonably obtained in the past or to be so obtained in the future; (c) any earnings or working time lost in the past and any loss of ability to earn money in the future; and (d) any damage to the subject vehicle or other personal property.

167. **Punitive Damages:** The conduct of the Honda Defendants was not simply negligent, but amounted to intentional misconduct, gross negligence, recklessness, and/or willful and wanton conduct, particularly in light of (a) the protracted period of time over which the defects have existed, (b) the long held knowledge of the defects by Honda, (c) the repeated failure to take adequate steps to notify the public or federal regulators of the danger, and (d) the repeated efforts by Honda to minimize the seriousness and scope of the problem. Such conduct justifies punitive damages against the Honda Defendants.

WHEREFORE, the Plaintiff demands judgment against Honda Motor, American Honda, Honda Mfg. and Honda R&D for all compensatory damages that she is entitled to under applicable state law and for punitive damages under applicable state law, together with pre- and post-judgment interest, all costs of this action, and for such other relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff demands a jury trial on all issues so triable as a matter of right.

Dated:  September 4, 2015.

Respectfully submitted,

*/s/ Jay F. Hirsch*
Jay F. Hirsch
Georgia Bar No. 357185
R. Timothy Morrison
Georgia Bar No. 525130
**POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, P.C.**
3391 Peachtree Road N.E., Suite 300
Atlanta, Georgia  30326
(404) 523-7706
Fax (404) 524-1648
efile@pmkm.com

*Attorneys for Plaintiff*